# THE BRETHREN MUTUAL INSURANCE COMPANY v.
# WILLIAM CONRAD FILSINGER ET UX.

[No. 1023, September Term, 1982.]

*Decided April 13, 1983.*

The cause was argued before GILBERT, C. J., and LOWE and MASON, JJ.

*Scott A. Hunsicker,* with whom was *George M. Radcliffe* on the brief, for appellant.

*H. Jack Price, Jr.,* with whom were *Steven C. Wilkinson* and *Wilson & Wilkinson* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

This appeal by the Brethren Mutual Insurance Company (Brethren) involves a fire insurance policy appraisal clause and prejudgment interest. Brethren was unsuccessful in the Circuit Court for Allegany County (GETTY, J.) in having its claim to a deduction for depreciation upheld.

## THE FACTS

Brethren insured a frame and stone one family dwelling located in Cumberland, Allegany County, which was the tenant occupied property of William C. Filsinger and Peggy Ann Filsinger, his wife. The covered perils included direct loss caused by fire and lightning, windstorm and hail, as well as explosion. The insurance contract provided for the payment of "actual cash value" in the face amount of $30,000.

In addition to Brethren's policy, the Filsingers owned a "replacement cost" policy issued by Erie Insurance Exchange. The face amount of that policy was $35,000.

On April 11, 1977, while both of the aforementioned policies were in effect, the property was destroyed by fire. The Filsingers gave notice to the insurance company of the loss and submitted a sworn proof of loss alleging an actual cash value loss in the amount of $82,240. The Filsingers demanded payment from Brethren in the amount of $30,000, the limit of the policy.

Pursuant to the terms of the policy, Brethren opted for an appraisal. The policy provision relative to the appraisal declares:

> "Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. *An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.* Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally." (Emphasis supplied.)

Brethren submitted to the Filsingers a form entitled "Agreement for Submission to Appraisers"; the Filsingers declined to execute it. The form instructed the appraisers to determine "Sound Value," which is defined on the form as actual cash value of the property prior to the loss with proper deduction for depreciation.

The Filsingers filed suit against Brethren alleging a breach of contract by the company because of its failure to pay the claim for the fire loss. Filsinger also asserted a claim for interest from the date of the loss at the rate of 6 percent per annum. Brethren responded by filing a motion to dismiss on the ground that the action was premature in that the appraisal had not yet been completed. No ruling seems to

have been made on Brethren's motion. In any event, the appraisers were appointed, and they determined the actual cash value to be $69,000 and the amount of the loss to be $66,000.[1] Erie Insurance Exchange paid appellees a proportionate amount of the appraiser's award. Through their attorney, appellees demanded from Brethren its pro rata share of the loss in the amount of $29,040.

Brethren attempted to apply a 15 percent depreciation factor, offering $25,892.32. The appraisers had made no deduction for depreciation. The appellees rejected the offer and demanded the entire $29,040.

The Filsingers filed a petition for declaratory relief, requesting the court to render a declaratory judgment as to the issue of the legality *vel non* of Brethren's applying a percentage of depreciation to the amount of loss as determined by the appraisers.

Judge James S. Getty, who heard the matter in the Circuit Court for Allegany County, held that the appraisers were not bound to make any adjustment for depreciation and that Brethren was precluded from making any correction of the decision reached. Judge Getty ruled that the decision of the arbitration panel was binding on the parties and that Brethren should pay accordingly. Filsingers then filed a motion for summary judgment as to the payment due under the terms of the policy and for interest from the date of the loss.

Judge Getty opined that the trial court could not review the decision of the appraisers, and entered judgment against Brethren in the amount of $29,040 with prejudgment interest from May 1, 1980. This appeal ensued.

### Depreciation

Brethren argues firstly that the failure of the appraisers and umpire to make a deduction for depreciation from their findings of replacement value constituted a violation of the

---

1. The loss was mitigated by $3,000 because cement slabs and an excavated basement were undamaged by the fire.

terms of the policy and a mistake of law. Secondly, Brethren contends that the trial court erred in holding that it could not review the award of the appraisers and umpire. We shall discuss these issues in inverse order.

The trial court's decisions turned primarily on the question of its scope of review. Judge Getty found the decision in *Schreiber v. Pacific Coast Fire Insurance Co.,* 195 Md. 639, 75 A.2d 108 (1950), to be dispositive. In *Schreiber,* the insured sought to have the court set aside an award reached as a result of an appraisal conducted under the provisions of an insurance policy containing the exact language in issue here. Quoting from *Continental Milling & Feed Co. v. Doughnut Corp.,* 186 Md. 669, 674-675, 48 A.2d 447, 449 (1946), the Court of Appeals in *Schreiber* stated:

> " 'It is a fundamental principle that where the parties to a dispute decide of their own accord to submit their dispute to arbitration without restriction or condition, the award on the subject matter, in the absence of fraud or mistake, is binding and conclusive upon the parties. *J. F. Fitzgerald Construction Co. v. Southbridge Water Supply Co.,* 304 Mass. 130, 23 N.E.2d 165 [(1939)]; *Stowe v. Mutual Home Builders Corporation,* 252 Mich. 492, 233 N.W. 391 [(1930)]. The Court will not review the findings of law and fact made by arbitrators, or substitute its judgment for theirs. . . The reason for this doctrine is that an award by arbitrators is a decision of a tribunal which the parties themselves have created, and by whose judgment they have mutually agreed to abide.' " 195 Md. at 646-647.

The *Schreiber* Court concluded that, "[t]his rule restricting and preventing judicial review of errors of fact or of law in an award of arbitrators or appraisers is applicable to an appraisal under the usual appraisal clause in a fire insurance policy." 195 Md. at 647.

Judge Getty interpreted *Schreiber* and *Chillum v. Button & Goode,* 242 Md. 509, 219 A.2d 801 (1966), to require a

court to enforce the "contract ... even if the decision is erroneous, unless the arbitrator acted fraudulently, went beyond the scope of the issues, or that the proceedings lacked procedural fairness." The trial judge found that the failure of the arbitration panel to make a deduction for depreciation in arriving at actual cash value did not fall into any of the exceptions to the general rule. He concluded that under the language of the policy as drafted by the insurer, an award by any two appraisers shall determine the actual cash value.

Brethren, in this Court, objects to the trial judge's application of *Schreiber,* contending that an appraisal under an insurance contract is not analogous to arbitration and that the analogies to arbitration law utilized by the trial court were improper. In support of its position, Brethren cites a New York Court of Appeals case, *In Re Delmar Box Company,* 309 N.Y. 60, 127 N.E.2d 808 (Ct. App. N.Y. 1955), for the proposition that there are basic distinctions between arbitration and appraisement under a fire insurance policy.

Recently, in *Aetna Casualty & Surety Company v. Insurance Commissioner,* 293 Md. 409, 445 A.2d 14 (1982), the Maryland Court of Appeals, citing the *Delmar* case, noted that the New York court was an example of those which assert that because of distinctions between "appraisal under a standard fire insurance policy and statutory arbitration, the legislative policy ... [applicable] to [arbitration] is inapplicable [to appraisal under a fire insurance policy]." [2] 293 Md. at 418. Such a position, however, has not been taken by the Maryland courts. The *Aetna* Court declared:

> "In Maryland, this Court has long recognized that, notwithstanding the distinctions between an appraisal under an insurance policy appraisal clause and arbitration, appraisal is analogous to arbitration. Consequently, this Court has applied

---

2. The *Aetna* case involved the question of whether under a standard appraisal clause in a fire insurance policy an insured can compel an insurer to submit to appraisal. The specific legislative policy which the court was considering was that which favors enforcement of executor agreements to arbitrate.

arbitration law to appraisal clauses in insurance policies. *E. g., [The Caledonian Insurance Co. of Scotland v.] Traub,* 83 Md. [524], 531-32, 35 A. [13] 15 [(1896)]; *see, e.g., [The Shawnee Fire Ins. Co. of Topeka, Kansas v.] Pontfield,* 110 Md. [353], 360, 72 A. [835], 836 [(1909)], *[The Connecticut Fire Ins. Co. of Hartford v.] Cohen,* 97 Md. [294], 302, 55 A. [675], 678 [(1903)]." 293 Md. at 422.

*Aetna* made clear that *Schreiber* is the law in Maryland. The principles applied in *Schreiber* are applicable with equal force to the instant case. Even if a mistake of law had been committed by the appraisers, the error would not be susceptible to review by the courts in Maryland unless it fell within the limited class of mistakes delineated in *Schreiber. Schreiber,* quoting 5 C.J. 179, explained:

> " 'An honest mistake of judgment in the conclusion of the arbitrators which does not exceed the bounds of the submission is not, as a general rule, ground of impeachment of the award, whether the alleged mistake is one of fact or of law, or of both. *** Such errors are among the contingencies which parties assume when they select such tribunals.' " 195 Md. at 648.

The only remaining question pertaining to depreciation is whether such a deduction is required under the terms of the policy itself. It is not. The procedure was that appraisers were directed to state separately actual cash value and loss to each item. "An award in writing, so itemized, of any two [appraisers and/or the umpire] when filed with . . . [the] Company shall determine the amount of actual cash value and loss." The policy does not command that depreciation shall be deducted. Moreover, the appraisal binds the insured and the insurer.

Brethren maintains that the unexecuted "Agreement for Submission to Appraisers" which requires depreciation, was intended by the parties to govern the appraisal. Judge Getty correctly found that the "Agreement" was not referred to in the policy nor was it ever agreed to by the Filsingers.

We think that the award of the appraisers, in the instant case, is final, binding, and not capable of revision by Brethren or by the courts at its urgings. The "Agreement for Submission to Appraisers" was not a part of the policy. Furthermore, the policy terms did not mandate depreciation.

### Prejudgment Interest

Brethren avers that the trial court erred in awarding prejudgment interest to the appellees. Judge Prescott, writing for the Court of Appeals in *Affiliated Distillers Brands Corp. v. R.W.L. Wine and Liquor Co., Inc.,* 213 Md. 509, 132 A.2d 582 (1957), penned a concise statement of the rule concerning prejudgment interest which is widely quoted in Maryland cases. It reads:

> "The law in Maryland with reference to interest is well settled. The general rule is that interest should be left to the discretion of the jury, or the Court when sitting as a jury. However, this general rule is subject to certain exceptions that are as well established as the rule itself. Among the exceptions are cases on bonds, or on contracts, to pay money on a day certain, and cases where the money has been used. If the contractual obligation be unilateral and is to pay a liquidated sum of money at a certain time, interest is almost universally allowed from the time when its payment was due. *Weant v. Southern Tr. Co.,* 112 Md. 463, 473, 77 A. 289 [(1910)]; *Picking v. Local Loan Co.,* 185 Md. 253, 44 A.2d 462 [(1945)] *Cf.* 30 *Am. Jur., Interest,* par. 7; *Williston on Contracts,* Vol. 5, paras. 1410, 1413; *Sedgwick on Damages,* par. 301; *Maryland Lumber Co. v. White,* 205 Md. 180, 197, 198, 107 A.2d 73 [(1954)]; *Shipley v. Meadowbrook Club,* 211 Md. 142, 151, 126 A.2d 288 [(1956)]." 213 Md. at 516-17.

The Court's review of a trial court's award of prejudgment interest is to be guided by the following principles:

> "There is, of course, a presumption that the discretion vested in the trial court 'was not abused but was exercised with just regard to the rights and interest of both the plaintiff and the defendants,' *Moreland Inc. v. Moreland,* 175 Md. 145, 149, 199 A. 871, 872 (1938), thus the burden is upon the appellant of establishing that 'according to the equity and justice appearing between the parties on a consideration of all the circumstances of the particular case as disclosed at the trial,' the trial court abused its discretion and worked an injustice to the appellant by its award of interest. *See, State, Use of Havre de Grace v. Fahey,* [108 Md. 533, 70 A. 218 (1908)]; *see also, Bucher v. Federal Baseball Club of Balto., Inc.,* 130 Md. 635, 643-44, 101 A. 534, 538 (1917)."

*I. W. Berman Properties v. Porter Brothers, Inc.,* 276 Md. 1, 19-20, 344 A.2d 65 (1975).

The trial court in the case *sub judice* was entitled to consider: that on April 14, 1980, the appraisers made their award thereby reducing Brethren's debt to the Filsingers to a sum certain; that the procedure whereby the appraisers were commissioned to determine the actual cash value, and the amount of loss, was created and mandated by the terms and conditions of the policy written by Brethren; and that from the time that the appraisers made their award, which then became due and payable, Brethren retained the entire sum.

Brethren argues that when an insurer raises a good faith defense it should not be penalized by having to pay interest. A reading of the case law makes it clear that the reason for the broad judicial discretion permitted on the question of prejudgment interest is to best afford full and fair compensation, under the circumstances of the case, to the injured party. Prejudgment interest is awarded so as to place the injured party in the same position he or she would have occupied had the defaulting party performed as he or she was supposed to perform. Regardless of an insurer's good faith denial of coverage, a plaintiff is entitled to recover interest

from the date coverage was denied. *George's Radio & T. V. v. Ins. Co. of North America,* 536 F. Supp. 681, 683-84 (D. Md. 1982); *see also Dodson v. Anne Arundel County,* 294 Md. 490, 451 A.2d 317, 324 (1982).

*Judgment affirmed.*
*Costs to be paid by appellant.*