816 F.2d 965
 22 Fed. R. Evid. Serv. 1593
 BITUMINOUS CONSTRUCTION, INC., Plaintiff-Appellee,
v.
RUCKER ENTERPRISES, INC., Defendant-Appellant,
and
Jack Jones, individually, a/k/a Rucker Enterprises, Inc.;
Claude Shaffer, individually, a/k/a Alexandria Asphalt
Paving and Maintenance Company, Inc.; Alexandria Asphalt
Paving and Maintenance Company, Inc., Defendants.
 No. 86-1156.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 3, 1987.
Decided April 21, 1987.
 
 Kelly Ralston Dennis, McLean, Va. (Light & Harrison, P.C., McLean, Va. on brief) for appellants.
 Robert Anthony DiCicco, Towson, Md., for appellee.
 Before RUSSELL and ERVIN, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 ERVIN, Circuit Judge:
 
 
 1
 Defendant Rucker Enterprises, Inc. ("Rucker") appeals from a judgment of the district court entered in favor of plaintiff Bituminous Construction, Inc. ("Bituminous") in this case involving claims for breach of contract. Because we find no error in the proceedings below, we affirm the judgment of the district court.
 
 
 2
 Rucker was the owner of certain property in Maryland on which parking lots had been constructed. Rucker contracted with Claude B. Shaffer, through one of Shaffer's companies, for Shaffer to resurface the parking lots.[1] On or about November 11, 1982, Shaffer subcontracted with Bituminous for Bituminous to do most of the resurfacing work and provide the materials for the job. Bituminous sent a copy of its contract with Shaffer to Rucker on or about November 30, 1982.
 
 
 3
 Because Bituminous had never before worked with Shaffer and therefore did not know if Shaffer were a good credit risk, Bituminous asked Rucker to make checks in payment for the resurfacing project payable to Shaffer and Bituminous jointly. In a letter of November 23, 1982, Rucker agreed to Bituminous's request, stating that "[c]hecks payable for bituminous materials used on the [resurfacing project] will be made payable to: Alexandria Maintenance Co. [a Shaffer company] and Bituminous Construction, Inc...."
 
 
 4
 Bituminous performed the resurfacing work on or about December 2, 1982, and on December 8, it submitted a bill for its work in the amount of $18,261.70 to Shaffer. Shaffer refused to pay Bituminous because Shaffer had not been paid by Rucker. Shaffer later sued Rucker for payment, and Rucker settled the suit for $25,000. Rucker's settlement check was made payable solely to Shaffer. Rucker apparently believed that Shaffer would pay the amount due Bituminous out of the $25,000 settlement, but Bituminous never received any money from Shaffer or Rucker.
 
 
 5
 Bituminous filed suit against Shaffer and Rucker, alleging claims for fraud and breach of contract. Rucker cross-claimed, seeking judgment against Shaffer in the amount of any judgment that might be entered against Rucker in favor of Bituminous.
 
 
 6
 The case proceeded to trial before the district judge, sitting without a jury. At the close of Bituminous's case, the defendants moved for dismissal of all claims pursuant to Fed.R.Civ.P. 41(b). The district judge dismissed Bituminous's fraud claim, but trial of the breach of contract claim continued.
 
 
 7
 At the conclusion of the trial, the district court entered judgment in favor of Bituminous and against all of the defendants, jointly and severally, in the amount of $18,261.70. Additionally, the district court awarded Bituminous prejudgment interest at the rate of ten percent from January 8, 1983, to the date of judgment. The court entered judgment for Rucker on its crossclaim against Shaffer in the amount of $18,261.70.
 
 
 8
 Rucker's primary contention on appeal is that the district court erred in declining to grant its motions to dismiss Bituminous's breach of contract claim made at the close of Bituminous's case and at the conclusion of all of the evidence. From our review of the record, we find no indication that Rucker moved to dismiss at the conclusion of all of the evidence. However, Rucker did move to dismiss at the close of Bituminous's case, pursuant to Fed.R.Civ.P. 41(b). When the district court denied this motion with respect to Bituminous's breach of contract claim, Rucker proceeded with the case and offered evidence in defense of Bituminous's claim to the district court.
 
 
 9
 Under these circumstances, the district court's denial of Rucker's motion to dismiss the breach of contract claim is not subject to review on appeal. It is settled law that
 
 
 10
 [w]hen a Rule 41(b) motion is denied, the defendant has two alternatives: he can either proceed to present his evidence, or he can stand on his motion and bring an appeal. He cannot, however, do both. By presenting evidence, a defendant waives his right to appeal from the denial of his motion to dismiss; by appealing the motion to dismiss, he waives his right to present evidence should his appeal be denied.
 
 
 11
 duPont v. Southern National Bank, 771 F.2d 874, 881 (5th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986). As Professors Wright and Miller observe, "[t]he significance of this [rule] is that on appeal from a final judgment the court will look to all of the evidence and not merely that put in as part of the plaintiff's case." 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2371, at 221 (1971). When a defendant has proceeded to offer evidence after the denial of a motion to dismiss under Rule 41(b), "the sufficiency of the evidence is tested on appeal by viewing the entire record, reversal being warranted only if the district court's findings are clearly erroneous." Duval v. Midwest Auto City, Inc., 578 F.2d 721, 724 (8th Cir.1978).
 
 
 12
 Accordingly, in this case, we look to the entire record developed below to determine whether there was sufficient evidence to support the judgment against Rucker. In our view, the evidence was sufficient, and the findings of the district court were not clearly erroneous.
 
 
 13
 There were two issues presented below that were relevant to a determination of Rucker's liability: (1) Did Rucker assume responsibility to ensure that Bituminous was paid for the resurfacing project?; and (2) If so, for what amounts did Rucker assume responsibility? Rucker's primary argument is that it did not agree to pay any amounts to Bituminous. Alternatively, Rucker contends that it agreed to pay Bituminous only amounts due for the materials Bituminous supplied for the resurfacing project, and not amounts due for Bituminous's performance of the resurfacing work. The district court found that Rucker had assumed responsibility to ensure that Bituminous was paid the full price for its resurfacing work, including payment for labor and equipment, as well as materials. In our view, there was sufficient evidence to support this conclusion.
 
 
 14
 The joint check agreement set forth in Rucker's letter of November 23, 1982, made clear that Rucker had agreed to issue checks payable jointly to Shaffer and Bituminous for at least some portion of the resurfacing project. Bituminous's executive vice president, Richard Story, and Rucker's senior commercial property manager, Charles Kolakoski, testified that Bituminous had requested the joint check agreement because Shaffer's credit was doubtful. From this testimony and the joint check agreement itself, it was apparent that Rucker had assumed responsibility to make sure that Bituminous was paid for at least some portion of the resurfacing project; the purpose of the joint check agreement was to ensure that Bituminous could look to Rucker for payment, without being compelled to rely solely on Shaffer's doubtful credit.
 
 
 15
 There was conflicting evidence about whether Rucker had agreed to pay Shaffer and Bituminous jointly only for materials furnished by Bituminous, or for all of Bituminous's work on the resurfacing project, including materials, labor and equipment. The joint check agreement stated that "[c]hecks payable for bituminous materials" would be made payable to Shaffer and Bituminous jointly. Kolakoski of Rucker stated that the joint check agreement applied only to payments for materials furnished by Bituminous. However, Story of Bituminous testified that the agreement had always been intended to cover amounts due Bituminous for its materials, labor and equipment used in the resurfacing project. The district court chose to credit the testimony of Story, whom it found to be a convincing witness, and not to credit the testimony of Kolakoski.
 
 
 16
 Furthermore, as the district court noted, on the several occasions that Bituminous demanded payment from Rucker for its work on the resurfacing project, Rucker never indicated that it believed it was obligated to pay Bituminous for materials only. Rather, in response to Bituminous's numerous demands for payment, Rucker's president, Jack Jones, gave Bituminous repeated assurances that the matter would be resolved shortly. Additionally, a letter written by Jones to Shaffer after the resurfacing work was completed indicated that Jones believed Rucker was obligated to pay Shaffer and Bituminous jointly for the entire resurfacing project, including materials, labor and equipment.
 
 
 17
 Rucker contends on appeal that the joint check agreement could not have been intended to cover the cost of Bituminous's labor and equipment on the resurfacing project, because Rucker did not know that Bituminous would do the resurfacing work until after the work was completed. The record showed, however, that Bituminous had sent a copy of its contract with Shaffer to Rucker under cover of a transmittal letter dated November 24, 1982. The transmittal letter stated that "[t]he prices [quoted in Bituminous's contract] include material, labor, and equipment." The envelope in which the transmittal letter was mailed bore a postmark of November 30. Kolakoski testified that Rucker probably received the letter a couple of days later. Based on this evidence, the district court found that Rucker had received the transmittal letter from Bituminous before the resurfacing work began on or about December 2, 1982, and that Rucker thus knew before the project began that Bituminous would provide materials, labor and equipment. This finding was based on substantial evidence and is not clearly erroneous.
 
 
 18
 The district court concluded from the evidence presented that Rucker had agreed to ensure that Bituminous would be paid for all of its work on the resurfacing project, including materials, labor and equipment. The district court further found that Rucker had breached this agreement when it refused to pay Bituminous for the resurfacing project, after Bituminous's demands for payment from Shaffer proved futile. Accordingly, the district court concluded that Bituminous was entitled to recover from Rucker the full $18,261.70 that was due Bituminous for its work on the resurfacing project. Viewing the record as a whole, we are of the opinion that there was sufficient evidence to support this finding of liability.
 
 
 19
 Rucker's remaining arguments require little discussion. Rucker contends that the district court committed prejudicial error in admitting into evidence three items of correspondence that, according to Rucker, were subject to exclusion under Fed.R.Evid. 408. Rule 408 requires exclusion of evidence concerning offers to compromise or settle disputed claims, but only if the evidence is offered to prove either liability for or invalidity of a claim or its amount. "Whether to admit evidence for another purpose is within the discretion of the trial court; the court's decision will not be reversed in the absence of an abuse of discretion amounting to 'manifest error.' " Belton v. Fibreboard Corp., 724 F.2d 500, 505 (5th Cir.1984).
 
 
 20
 The first two items of correspondence admitted into evidence discussed settlement negotiations involving Bituminous, Shaffer and Rucker. When Rucker objected to admission of these letters under Rule 408, the district judge specifically stated that he would not consider the settlement offers contained in the letters for the purpose of establishing liability. Rather, the district court admitted the letters for the purpose of showing Rucker's understanding of its obligations under the joint check agreement, and to establish that Bituminous had made demand upon Rucker for payment. The district court's admission of the letters for these purposes and under these circumstances was not an abuse of discretion.
 
 
 21
 On appeal, Rucker also contends that Rule 408 required the exclusion from evidence of a memorandum written by Jones of Rucker to Story of Bituminous. However, when the memorandum was introduced into evidence at trial, Rucker objected to its admission on the ground that it was irrelevant. The district court overruled this objection and admitted the memorandum. Under these circumstances, we will not review Rucker's contention, raised for the first time on appeal, that the memorandum was subject to exclusion under Rule 408. See, e.g., 1 J. Weinstein & M. Berger, Weinstein's Evidence p 103, at 103-25 to -26 (1986) (Under Fed.R.Evid. 103, "a specific objection made on the wrong grounds and overruled precludes a party from raising a specific objection on other, tenable grounds on appeal.").
 
 
 22
 Rucker's final argument is that the district court erred in awarding Bituminous prejudgment interest at the rate of ten percent from January 8, 1983, to the date of judgment. Under Maryland law, which applies in this case, an award of prejudgment interest is a matter within the discretion of the trial judge. Agnew v. State, 51 Md.App. 614, 446 A.2d 425, 447 (1982). There is a presumption that the discretion of the trial judge was not abused. Vimco Concrete Accessories, Inc. v. Maggitti, 44 Md.App. 176, 407 A.2d 1187, 1190 (1979). "Prejudgment interest is awarded so as to place the injured party in the same position he or she would have occupied had the defaulting party performed as he or she was supposed to perform." Brethren Mutual Insurance Co. v. Filsinger, 54 Md.App. 357, 458 A.2d 880, 885 (1983). In suits for breach of contract, such as this one, "[i]f the breach consists of a failure to pay a definite sum in money ..., interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled." Restatement (Second) of Contracts Sec. 354, at 150 (1981).
 
 
 23
 In this case, Bituminous was owed a fixed and definite sum of $18,261.70 for its work on the resurfacing project. It presented a bill for this amount to Shaffer on December 8, 1982, and, under Bituminous's normal billing and collection procedures, payment became due thirty days thereafter, on January 8, 1983. When payment from Shaffer was not forthcoming, Bituminous presented its bill to Rucker for payment on January 12, 1983. Under these circumstances, it was proper for the district court to award prejudgment interest from January 8, 1983 to the date of judgment in favor of Bituminous and against the defendants. Because Bituminous was entitled to look to Rucker for payment under the joint check agreement, and Rucker was obligated to ensure that Bituminous was paid, it was not an abuse of discretion for the district court to award prejudgment interest against Rucker.
 
 
 24
 For the reasons stated in this opinion, the judgment of the district court is affirmed.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 It appears from the record that Shaffer controlled a number of corporations that were essentially corporate shells. In this opinion Shaffer and his companies will be referred to collectively as "Shaffer," unless otherwise indicated